IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
FACEBOOK USER ID JOE.SLICK.104
THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK INC.

Case No. 7:19mj149

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Drug Enforcement Administration (DEA) Task Force Officer (TFO) Clark Jackson,

being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain Facebook user ID that is stored at premises owned,

maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking

company headquartered in Menlo Park, California.  The information to be searched is described

in the following paragraphs and in Attachment A.  This affidavit is made in support of an

application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to

require Facebook to disclose to the government records and other information in its possession,

pertaining to the subscriber or customer associated with the user ID.

2.      I have been a Task Force Officer with the Drug Enforcement Administration

(DEA) since October 1, 2018.  I am currently assigned to investigate drug related crimes as a

member of the DEA, Washington Field Division (WFD) / Roanoke Resident Office (RRO) and

have been employed by Montgomery County Sheriff's Office since 2012. I have received

training in all areas of narcotics investigations including search and seizure laws and statutes

pertaining to enforcement of the Controlled Substances Act, highway interdiction, and parcel interdiction. Since becoming a DEA Task Force Officer in October of 2018, I have assisted other law enforcement officers in conducting narcotics investigations that have resulted in search warrants and the arrest and prosecution of numerous individuals as well as the seizure of illicit drugs. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 846, conspiracy to distribute methamphetamine, violations of Title 21, United States Code, Section 841, distribution of methamphetamine; and violations of Title 21, United States Code, Section 843(b), offenses involving the use of communications facilities in commission of narcotics offenses, have been committed by Antonio COLEMAN, and others.  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

4.     Because this affidavit is being submitted for the limited purpose of obtaining a search warrant for the target Facebook accounts, it is not intended to include each and every fact and matter observed by me or known to the government. Therefore, I have set forth only those facts necessary to support probable cause for this application.

5.      This affidavit is made in support of a Search Warrant to search the Facebook account under the name of "Slick Mark", with a Facebook ID number of joe.slick.104;

6.      Since July 2019, the DEA RRO has been investigating the distribution of methamphetamine in and around Montgomery County, VA. On July 25, 2019, DEA TFO Clark Jackson conducted an interview with a DEA confidential source, hereafter referred to as CS. The CS provided information on his/her Source of Supply (SOS) for methamphetamine. The CS stated that his/her SOS was a black male with dreadlocks and known only as "PAPPY". The CS provided phone numbers for "PAPPY" as (540) 970-6719 and (540) 330-1170. The CS stated that he/she would also communicate with "PAPPY" via Facebook Messenger and provided a Facebook account for "PAPPY" with profile name "Slick Mark" (Facebook ID joe.slick.104.)

7.      On September 3, 2019, DEA TFO Clark Jackson obtained a thirty day Federal tracking warrant, case # 7:19MJ98, signed by U.S. Magistrate Judge Robert S. Ballou for cell phone number (540) 970-6719. On the same date TFO Jackson emailed this tracking warrant to T- Mobile and began to receive location information from T-Mobile on September 4, 2019, at 6:09 am.

8.      On September 5, 2019, DEA TFO Clark Jackson utilized a Federal confidential source to identify "PAPPY" as Antonio Dalmon COLEMAN. The CS was shown a photograph of COLEMAN and the CS positively identified COLEMAN as his/her SOS for methamphetamine, and the subject he/she communicated with via the Facebook Messenger profile "Slick Mark".

9.      On September 17, 2019, members of the DEA RRO conducted a controlled purchase of two ounces of methamphetamine from Antonio COLEMAN using the CS. The CS began to communicate with COLEMAN on Facebook Messenger, specifically with the "Slick

Mark" account, and these messages were recorded and observed by law enforcement. COLEMAN then asked for the CS's telephone number and their communications then switched to text messaging between the CS phone and (540) 330-1170 which had previously been identified as the number of a phone utilized by COLEMAN. These text messages and phone calls were recorded and observed by law enforcement. Ultimately, COLEMAN provided the CS two ounces of suspected methamphetamine in exchange for $1,180.00 of DEA Official Advanced Funds (OAF). Surveillance officers observed the meeting between COLEMAN and the CS, and were able to identify COLEMAN as the person that the CS met with.

10. Based upon the information outlined in this affidavit, I believe that Antonio COLEMAN utilizes the Facebook Account "Slick Mark" (Facebook ID joe.slick.104) to further his drug trafficking activities. Additionally, it is my belief that Antonio COLEMAN utilizes his Facebook Account to communicate with other known and unknown co-conspirators to facilitate drug trafficking activities in the United States, in the Western District of Virginia and in other Federal Districts.

11. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

12. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical

address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

13.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

14.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

15.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations

to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

16.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

17.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

18.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

19.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as

webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

20.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

21.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

22.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

23.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

24.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

25.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date),

the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

26. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access,

use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

27. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

28. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

29. Based on the forgoing, I request that the Court issue the proposed search warrant.

30. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

31. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

32. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Clark Jackson
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on _November 18_____, 2019

The Honorable Robert S. Ballou
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF VIRGINIA